## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRIAN MILLER,<br><br>    Plaintiff,<br><br>    v.<br><br>CNH AMERICA LLC<br><br>    Defendant. | Case No. |

## **COMPLAINT**

### **The Parties**

1.      Plaintiff Brian Miller is an adult and is domiciled in Reno County, Kansas. He is a dairy farmer and was 31 years old when he was severely injured by Defendant's product.

2.      Brian is the husband of Amanda Miller and just before his injury, the two of them had recently completed all but the final class for foster care certification. In addition to becoming foster/adoptive parents, they also had hoped to have their own children naturally.

3.      Defendant CNH America LLC (hereinafter "CNH") is a Delaware corporation, with its principal place of business is Racine, Wisconsin. CNH designs, manufactures, markets and sells farm machinery, including the New Holland T7.270 Autocommand tractor. CNH does business in Kansas.

### **Jurisdiction/Venue**

4.      This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, diversity citizenship. The Plaintiff is domiciled in and a citizen of Kansas. The Defendant is a citizen of the state where it is incorporated and where it has its principal place of business, neither of which is Kansas. The amount in controversy exceeds $75,000.

5.      The court has personal jurisdiction over the Defendant because it conducts business in Kansas and its product caused injury in Kansas.

6.      Venue is proper in Kansas because Kansas is the judicial district in which a substantial portion of the events or omissions giving rise to the claim occurred and also because Defendant is a corporation subject to the court's personal jurisdiction in Kansas.

### Purchase of New Holland Tractor and Receipt of Manual

7.      Plaintiff and his father operate a dairy farm. Plaintiff's father's corporation purchased a previously owned 2011-12 New Holland T7.270 Autocommand tractor, tractor number ZBBZ 16664, from Agri-Center in Reno County, Kansas for $132,557 on December 31, 2015. The tractor was purchased to be used in their dairy operation. Concurrent with the purchase, the Millers were provided a manual drafted by Defendant, which Plaintiff utilized in operating the tractor.



8.      The New Holland T7.270 manual states at page 2-78: "EPB [electronic park brake] will automatically engage at key-off or if the operator leaves the seat."  As evidenced from the events described below, this is untrue.

9.      The New Holland T7.270 manual states at page 2-79, second bullet point: "The park brake is automatically engaged in the following situation…The operator leaves the seat for more than five seconds."  As evidenced from the events described below, this is untrue.

10.     The New Holland T7.270 manual states at page 2-112: "If the operator leaves the seat for more than 5 seconds with the engine running and without engaging the electronic park brake (EPB), the transmission will not drive until the operator is re-seated and the clutch pedal has been cycled (depress/release)."  As evidenced from the events described below, this is untrue.

11.     The New Holland T7.270 tractor displays within the cab an illuminated "!" and "P" icon and also emits an alert tone when the tractor is <u>stationary</u> and the operator leaves the seat for more than five seconds. These signal to the operator that the EPB is applying. When the tractor is stationary, the EPB <u>does</u> apply.

12.     The New Holland T7.270 tractor displays within the cab an illuminated "!" and "P" icon and also emits an alert tone when the tractor is <u>moving</u> and the operator leaves the seat for more than five seconds. These also signal to the operator that the EPB is applying. However, when the tractor is moving, the EPB does <u>not</u> apply.

13.     Whether the New Holland T7.270 tractor is stationary or moving, if the operator leaves the seat, the dashboard and the audible tone communicate to the operator that the EPB is applying. But the EPB only applies if the machine is not moving.



Tractor moving and operator out of seat          Tractor in neutral and operator out of seat

14.     Prior to October 23, 2018, Brian Miller had, on many occasions, left the seat of the tractor when it was stationary. When he did so, within the cab he saw the illuminated "!" and "P" icons and heard the alert tone. These signals indicated that the EPB was applying and, in fact, it did apply.

15.     On October 23, 2018, in Reno County, Kansas, Brian was operating the T7.270 tractor while pulling a CrustBuster, Model 4030 All Plant, DD 48 x 7.5 seed drill.

16.     Brian was traveling at a speed less than 5 mph as he planted wheat.

17.     At approximately 3:00 p.m., Brian saw a piece of debris in the field ahead of the tractor/seed drill. As he did not want to run over the debris, he moved the hydrostat/throttle to the zero or near-zero position and stood up out of the seat to move the debris.

18.     Within the cab the "!" and "P" icons displayed and the alert tone sounded. Brian heard these, as he had on previous occasions, and he understood them to signify the EPB was applying, and Brian believed it would apply – bringing the tractor to a stop.

19.     Despite Brian's expectation, and contrary to the manual, the EPB did not apply. The transmission did not disengage and the tractor continued to move forward.

20.     While standing in the field and looking for the debris, Brian was struck from behind by the seed drill. As he fell to the ground, he grabbed the upper part of the drill's frame and held himself up as high as he could to avoid being run over by the steel discs that were cutting the earth just behind him.  Brian's leg was wedged under the drill's wheel, so he could not pull himself above the drill. As the tractor continued forward, Brian literally held on as if his life depended on it. The tractor and Brian continued this way for many seconds, if not well over a minute. Brian clung desperately to the drill while being drug for over 100 yards as the tractor continued to move forward without a driver in the cab.

21.     Ultimately, Brian lost his grip, was pulled under the machine, and run over by the seed drill.

22.     After running over Brian, the New Holland T7.270 Autocommand tractor continued on, completely unoccupied, through both the field where he had been planting and another adjacent field, for approximately one-quarter of a mile.



Tracks showing continued movement of
unoccupied tractor to tree row on horizon



Tree row where tractor ran for hours
unoccupied

23.     The tractor only stopped when it struck the hedgerow one-quarter mile away from
where it ran over Brian. There, it continued to run for hours, digging large holes in the ground as
its tires spun and Brian lay injured in the field. The tractor stopped only when it was found that
night by a friend engaged in the search for Brian.

24.     Brian laid alone in the field gravely injured, but conscious for over six hours.  He
tried to stand multiple times but was only able to stand up once, at which point the pain was so
unbearable that he briefly lost consciousness. In the hours that followed, Brian's family became
worried and began a search. Brian's father searched the field for Brian or the tractor and finally
found Brian after nightfall, but only on his second pass through the field. Brian was semi-conscious

at the time, and as he watched his father's truck trace the field in the pitch black, he worried he

was about to be run over again.

## Injuries/Medical Care

25.     EMS arrived at 9:33 p.m., and found Brian with blood on his lips, with labored

and rapid breathing, with no palpable pulse, with a blood pressure too low to be measured and

with an O2 saturation of only 80%, at most.

26.     A LifeSave Transport helicopter arrived and took Brian to Wesley Medical Center

in Wichita. Brian finally arrived at the hospital at 10:33 p.m., approximately 7 and ½ hours after

he was injured.

27.     Brian's first hospitalization at Wesley lasted from October 23, 2018 to December

12, 2018--50 days.  While there, he was diagnosed with the following injuries (as well as others

not listed here): bilateral rib fractures 3-7 on the right, bilateral rib fractures 2-7 on the left, bilateral

pneumothorax, acute kidney injury, left acetabular fracture, left superior and inferior pubic rami

fractures, anemia from acute blood loss, acute respiratory failure due to trauma, Grade 2 liver

laceration, small bowel contusion, small bowel obstruction with perforation x2, a deep pelvic

abscess, adult respiratory distress syndrome and sepsis.

28.     During the initial hospitalization, Brian underwent several  procedures, including:

left and right chest tube placements, nasal laceration repair, irrigation/drainage of right knee with

a traumatic arthrotomy with wound closure, closed reduction of the acetabular fracture, CT guided

abscess draining x3, exploratory laparotomy with small bowel repair, removal of succus and

creation of a loop ileostomy, bronchoscopy, intubation for ARDS, as well as placement of five

Jackson Pratt drains, one of which remained until well after his discharge from the Hospital.

29.   During Thanksgiving week, 2018, Brian was placed in a medical coma because of his ARDS symptoms. As he was put to sleep, his wife Amanda and his family told him goodbye. He was in a coma for three days.

30.   During the time he was in the hospital and throughout his recovery, his wife Amanda seldom left his side, advocating for him with health care providers, encouraging him, and abandoning her own needs to focus on him. A woman of strong faith, she suffered right along with her husband.



31.   After his initial stint at Wesley, he was transferred to Hutchinson Regional Medical Center where he underwent PT/OT during the holidays. He remained there from December 12 through December 28, 2018,

32.   Brian was discharged to a relative's home that had been outfitted with handicap accessibility on December 28, 2018. He was able to move to his parents' home on February 16, 2019 and began a slow recovery.

33.     Brian suffered pain and was again hospitalized at Wesley Medical Center, from June 4 to 9, 2019. In order to diagnose and correct what was causing his discomfort, he had an exploratory laparotomy with segmental small bowel resection, drainage of pelvic abscess, revision of loop ileostomy, ventral herniorrhaphy and an appendectomy.

34.     Brian's third hospitalization, also at Wesley Medical Center, lasted from September 13 to 15, 2019, during which time he had a loop ileostomy closure.

35.     Brian's physicians will attest that because of his extensive injuries, he has permanent lung damage and other permanent injuries that will continue to cause him to incur medical expenses and to limit his activities. His lungs have been a particular concern during the pandemic.

36.     To-date, Brian's medical expenses total nearly $1.7 million.

37.     Brian has endured great conscious pain and suffering, incurred significant medical expenses and has been unable to fulfill normal marital functions during his injury and recovery. He will incur medical expenses and experience pain and risk into the future. He has suffered pain and suffering, disability, scarring, disfigurement, and mental anguish.

38.     Throughout his injury and recovery, his wife Amanda has suffered loss of companionship and assistance and familial contribution of her husband, his household or domestic services, assistance, comfort and the ability to socialize with her husband Brian. His injury and recovery delayed their plans to start their family and to become foster parents.

39.     Brian hereby makes a consortium claim on behalf of his wife Amanda.

40.     By misleading Brian with its defective product and warnings, Defendant acted toward the plaintiff with willful and wanton conduct. It knew that serious harm would arise from the defendant's misconduct; it was aware of the likelihood of injury from a runaway tractor and

its misleading warnings and instructions. Brian should be awarded punitive damages in order to deter Defendant from selling, designing and manufacturing this defective product and to motivate Defendant to correct the defects in its product.

**Count 1—Negligence**

41.     Defendant owed a duty of reasonable care to Brian and breached that duty, which caused Brian's catastrophic injuries. Defendant breached its duties to Brian in all of the ways described in paragraphs 42-46 below.

42.     Designing and manufacturing an inherently unsafe and unreasonably dangerous tractor that would, while unoccupied, continue to move forward until its forward progress was stopped by an immovable object or the tractor ran out of fuel. Among other reasons, the tractor was unreasonably dangerous because it was not equipped with an Operator Presence Sensor Switch (aka "dead man's switch") that functioned when it was moving. Also, Defendant designed and manufactured a tractor in which the park brake did not automatically apply and the transmission did not automatically disengage when the operator left the seat if the tractor was moving.

43.     Designing and manufacturing an inherently unsafe and unreasonably dangerous tractor by providing defective warnings. When the operator leaves the seat, the same icons display on the dash and the same tone emits within the cab to indicate the EPB is applying whether the tractor is stationary or moving forward. Though the lights and tone would indicate otherwise, the EPB applies only when the tractor is stationary. Brian was misled by these warnings and by the display of the tractor speed as depicted in a bar graph form.

44.     Designing and manufacturing an inherently unsafe and unreasonably dangerous tractor by stating within the manual that the EPB applies and/or the transmission disengages when the operator leaves the seat when, in fact, neither occurs when the tractor is moving forward.

45.     Designing and manufacturing an inherently unsafe and unreasonably dangerous tractor by improperly and misleadingly warning the operator and/or failing to warn or adequately warn the operator that the EPB would not apply and/or the transmission would not disengage when the driver left the seat if the tractor was moving.

46.     Not acting as a reasonably prudent manufacturer and seller would have acted as to the design and warning defects as described above in light of the fact there existed alternative safer and feasible designs and warnings which were used at the time by not only other manufacturers of similar machinery, but by Defendant on other agricultural machines, including some tractors and its skid steer machines.

47.     All of the above-stated product defects existed at both the time of manufacture and sale (original and resale) of the New Holland Autocommand T7.270 tractor.

WHEREFORE, plaintiff requests an award of damages in excess of $75,000, for punitive and attorney fees as the court may consider just and proper and for his costs.

**Count II—Strict Liability**

48.     Defendants are strictly liable to Brian because of defects described above, which existed at the time of manufacture and sale (original and resale) of the New Holland Autocommand T7.270 tractor and because these defects caused serious injuries to Brian.

WHEREFORE, plaintiff requests an award of damages in excess of $75,000, for punitive damages and attorney fees as the court may consider just and proper and for his costs.

**Count III—Breach of Implied Warranty of Merchantability**

49.     Defendants are liable to Brian for breaching their warranty that the New Holland T7.270 tractor did not have design or warning defects and was fit for the purpose for which it was

sold when, in fact, there were the above-described design and warning defects, and the tractor was not fit for the purposes for which it was sold, all causing injuries to Brian.

WHEREFORE, plaintiff requests an award of damages in excess of $75,000, for punitive damages and attorney fees as the court may consider just and proper and for his costs.

Respectfully Submitted,


/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240
Brad J. LaForge, #20323
Don D. Gribble, # 12163
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, Kansas  67202
Tel:  (316) 265-7741
Fax:  (316) 267-7803
Email:  tibbets@hitefanning.com
Email:  laforge@hitefanning.com
Email:  gribble@hitefanning.com


**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on claims triable to a jury.

/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240


**DESIGNATION OF PLACE OF TRIAL**

Plaintiff hereby designates the United States District Court for the District of Kansas at Wichita, Kansas, as the place of trial.

/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240