**In the United States District Court
for the District of Kansas**

_____

Case No. 6:20-cv-01293-TC

_____

BRIAN MILLER,

*Plaintiff*

v.

CNH INDUSTRIAL AMERICA LLC,

*Defendant*

_____

**MEMORANDUM AND ORDER**

Plaintiff Brian Miller filed this products liability suit for injuries he sustained while operating a tractor manufactured by Defendant CNH Industrial America LLC. Doc. 4. CNH moved for summary judgment on all of Miller's claims, Doc. 95, and to exclude Miller's expert's testimony, Doc. 97. For the reasons below, those motions are denied.

**I**

**A**

**1.** Summary judgment is proper when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim's resolution. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over those material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. Indeed, belaboring such disputes undermines the efficiency Rule 56 seeks to promote.

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits

incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(d). To determine whether a genuine issue of fact exists, a court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1138 (10th Cir. 2011); *see also Allen v. Muskogee,* 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record as a whole, *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137–38 (10th Cir. 2016); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**2.** The admissibility of expert testimony is guided by Federal Rule of Evidence 702.[1] *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To fulfill its gatekeeping role, a trial court must ensure that the expert is qualified and that his or her testimony is both reliable and relevant. *Id.* "Rule 702 requires an expert witness to be qualified by 'knowledge, skill, experience, training, or education.'" *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). Testimony is reliable "if it is based on sufficient data, sound methods, and the facts of the case." *See Roe*, 42 F.4th at 1180–81 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). It is relevant if it helps the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020).

**B**

Miller and his father operate a dairy farm, Miller Dairy, in Kansas. Doc. 94 at ¶ 2.a.6. Miller has operated tractors and other farm

---

[1] Federal law governs the admissibility of evidence in federal diversity cases. *Sims v. Great Am. Life Ins.*, 469 F.3d 870, 880 (10th Cir. 2006).

equipment for many years. Doc. 102 at 10. In 2015, Miller Dairy purchased a used New Holland T7.270 Autocommand tractor, manufactured by CNH four years earlier, from a Kansas tractor dealer. Doc. 94 at ¶¶ 2.a.7–8. Miller was the tractor's primary operator. Doc. 102 at 11.

In October 2018, Miller was using the tractor to pull a seed drill while planting wheat. Doc. 94 at ¶ 2.a.12. The seed drill was 30 feet wide. Doc. 102 at 15. Miller was operating the tractor at approximately five miles per hour. *Id.* at 16. While the tractor was still moving, Miller got up from the driver's seat and stepped off the tractor to inspect what he believed to be a piece of metal on the ground. Doc. 94 at 4.

Miller claims that as he was exiting the tractor he thought he pulled the hydrostat to zero, meaning that the transmission was still engaged—*i.e.*, not in neutral—but its forward motion should be coming to a stop.[2] Doc. 94 at 4. Miller knew that the tractor was still moving when he stepped onto the ground. Doc. 102-1 at 47. After Miller stepped onto the ground, the seed drill hit him in the back, knocked him to the ground, dragged him for more than 100 yards, and then ran him over. Doc. 94 at 4–5. Miller was found in the field several hours later and required extensive medical care. *Id.* at 5. When the tractor was found about a quarter mile away, its tires were still moving. *Id.* It only stopped because it had run into a tree. *Id.*

With its purchase of the tractor, Miller Dairy received an operator's manual and in-person instruction from the local dealer's representative. Doc. 94 at ¶¶ 2.a.10–11. As relevant here, the manual describes the shuttle lever and the tractor's park brake. The shuttle lever switches the tractor's transmission between forward, neutral, and reverse. Doc. 96-2 at 22. The hand brake engages the park brake by pulling up on a lever near the driver's seat. Doc. 102-8 at 2. The electronic park brake engages the brake either automatically or by using the shuttle lever. *Id.*

Regarding the electronic park brake at issue, the manual states the following: "The park brake is automatically engaged in the following situation. At engine stop (key-off). The operator leaves the seat for more than five seconds. Tractor is stationary for more than 45 seconds." Doc. 96-2 at 19. Further, "If the operator leaves the seat for more than 5 seconds with the engine running and without engaging

---

[2] The hydrostat is also referred to by the parties as the speed lever. *See* Doc. 96-5 at 32.

the electronic park brake (EPB), the transmission will not drive until the operator is reseated and the clutch pedal has been cycled (depress/release)." *Id.* at 23.

The tractor's cab also conveys information to the operator. The dashboard includes an instrument cluster containing a dot matrix display. Doc. 102 at 21–23. This display instructs the operator with warnings and advisory symbols. Doc. 96-2 at 17. The manual's diagram of the instrument cluster states that "[i]f . . . the operator leaves the seat without applying the parking brake, a warning buzzer will sound and the parking brake lamp will flash for approximately 10 seconds or until the parking brake has been applied." *Id.* at 15. These signals occur if neither brake is engaged, no matter if the tractor is stationary or moving. *See* Doc. 102-15 at 2.

Many different sources warn the user to bring the tractor to a stop before dismounting. The manual instructs users never to dismount a moving tractor and to ensure that the brake is engaged. Doc. 102 at 20; Doc. 96-2 at 10, 20, 23. And the inside of the tractor contains similar warnings, such as, "Always engage parking brake before dismounting." Doc. 102 at 8.

## C

Miller filed suit and proposes three theories for recovery: negligence, strict liability, and breach of implied warranty. Doc. 94 at 11. In his negligence claim, Miller alleges that CNH breached its duty to give adequate warnings and instructions on how to use its product safely. *Id.* Specifically, he claims CNH failed to provide proper instruction in its manual regarding the electronic parking brake and failed to configure its warnings in a way that would not be misinterpreted. *Id.* In his strict liability and breach of implied warranty claims, Miller argues that these inadequate warnings and instructions made the tractor unreasonably dangerous and breached CNH's implied warranty. *Id.*

The parties' dispute centers on why an experienced tractor operator would leave the cab of a moving tractor despite knowing that this was dangerous. CNH alleges that Miller knew the danger of exiting a moving tractor and did so anyway, despite his training, common sense, and the tractor's warnings and instructions. Doc. 96 at 1–2. Miller admits that "best practices would say" not to exit a moving tractor, Doc. 96-5 at 11–13, and that had he followed his own general practice of engaging the brake with the shuttle lever, this accident would not have

happened, Doc. 102-1 at 49–50. But he claims CNH's warnings and instructions regarding the electronic park brake were inadequate because they led him to believe the tractor would stop as he dismounted. Doc. 102 at 2.

CNH moves for summary judgment on all of Miller's claims. Doc. 95.[3] CNH argues three points. First, it had no duty to warn Miller of the dangers of dismounting a moving tractor. Doc. 96 at 23. Second, its warnings were adequate. Doc. 96 at 28–31. Third, the adequacy of its warnings is a moot point because those warnings did not cause Miller's injury. *See* Doc. 96 at 36, 39.

## II

To prove that CNH's warnings and instructions were inadequate, Miller plans to present expert testimony from Michael Wogalter. His testimony can be summarized as three opinions.

Wogalter's first opinion is that the manual does not clearly state what happens when the operator leaves the seat while the tractor is moving. Doc. 101 at 3–4. According to Wogalter, the manual should specify that the brake will not engage and the transmission will continue to drive if the tractor is moving at all. *Id.* at 3.

Wogalter's second opinion is that the visual and auditory warnings are unclear. Doc. 101 at 4. That opinion has separate components. For example, he notes that the indicators do not distinguish between status and command displays, which lead an operator like Miller (who had heard and seen the same alarms in the past when the brake set) to reasonably assume that those alarms meant the brake would set on this occasion, too. *Id.* at 4–6. And he asserts confusion arises because the tractor uses symbols alone (instead of words and symbols together) and because some symbols communicate additional information by flashing. *Id.* at 6–7.

---

[3] Miller briefly argues that because CNH only addressed the issue of negligence in its Memorandum in Support, Doc. 96, it has moved for summary judgment only on Miller's negligence claim. Doc. 102 at 41. But, as CNH notes, it has moved for summary judgment on "all of Plaintiff's product[s] liability claims." Doc. 95 at 1.

Wogalter's third opinion is that CNH should have anticipated that an operator would need clearer instructions. Doc. 101 at 7. In particular, he notes that because the electronic brake was a new feature in the tractor, it is reasonable for operators to assume that the brake operates like other farm equipment with an automatic brake—that is, set automatically when the operator leaves the seat, even if the equipment is moving. *Id.* at 4, 7.

CNH moves to exclude Wogalter's expert testimony. It argues that Wogalter is unqualified—*i.e.*, his opinions fall outside his specialty and experience—and his opinions are unreliable and irrelevant. *See* Doc. 98 at 1–2. Miller, as the proponent of the expert testimony, bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) He has done so here and, as a result, CNH's motion to exclude is denied.[4]

**A**

CNH briefly argues that Wogalter is not qualified. Doc. 98 at 17–19. To qualify as an expert, a witness must "possess skill, experience, or knowledge in the 'particular field'" or the field must "fall 'within the reasonable confines' of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (citations omitted).

Contrary to CNH's position, Wogalter is qualified to offer an opinion regarding the warnings' adequacy. He has a Ph.D. in Human Factors Psychology and is a Board Certified Professional Ergonomist. Doc. 98-1 at 4. Human Factors and Ergonomics "deals with the design of products and systems based on people's abilities and limitations to promote productivity, satisfaction and safety." *Id.* Wogalter has more than thirty years of experience in this field and specializes in examining factors that influence warning effectiveness. *Id.* He has published more than 375 articles, books, and other materials in the field. *Id.* The

---

[4] Trial courts have discretion to determine how to perform their Rule 702 gatekeeping duty. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). And while a *Daubert* hearing is the most common method for fulfilling that function, it is not required. *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019). Because neither party sought such a hearing and given the fulsome record provided, including Wogalter's deposition testimony, his report, and the parties' submissions on the matter, there is sufficient evidence to resolve CNH's motion without holding a *Daubert* hearing.

majority of his publications concern warnings, warnings effectiveness, and consumer interpretation of warnings. Doc. 101 at 11. As a university professor, he taught graduate and undergraduate courses in various Human Factors and Ergonomics topics, including Warnings and Risk Communication. Doc. 98-1 at 4. Wogalter has consulted with the American National Standards Committee on warnings, Doc. 101 at 10, and with the Environmental Protection Agency on labeling and warnings, *id.* at 11. Several courts have found Wogalter qualified to testify as to warnings' and instructions' adequacy. *See e.g., Scanlan v. Sunbeam Prod., Inc.*, No. 3:12-CV-00009, 2018 WL 476165, at *4 (W.D. Ky. Jan. 18, 2018); *Tomsic v. Real Flame Co., Inc.*, No. 9:15-CV-78, 2016 WL 9558957, at *6 (E.D. Tex. Dec. 21, 2016); *Nisanov v. Black & Decker (U.S.) Inc.*, No. 05 Civ. 5911, 2008 WL 906708, at *8 (E.D.N.Y. Apr. 3, 2008).

CNH contends that Wogalter should be excluded like the damages expert at issue in *LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004). Doc. 98 at 18. Hardly. Unlike Wogalter's experience with warnings, the expert in *LifeWise* "was not an expert in damages analysis or in any of the techniques used to create" the damage model he wanted to offer, admitted that he had never previously used the methods used to calculate the model he sought to use, and disclaimed being a damages model expert. 374 F.3d at 928. That expert even testified that he took only a single undergraduate class in economics, "took no accounting or finance courses, had no training in damage analysis, had never testified as a damages expert or prepared an expert damages report, had never taught a course or lectured on damages, and has never been published in the field." *Id.*

That Wogalter has never personally operated a tractor or drafted warning or instructions for like machinery does not disqualify him from testifying as an expert. *Contra* Doc. 98 at 18. Firsthand knowledge or experience of the type that CNH claims Wogalter lacks is not required and, if anything, goes to the weight of his testimony, not its admissibility. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). In fact, CNH cites no authority that suggests this experience is required. *See* Doc. 98 at 18–19. And courts have rejected these same arguments for disqualification. *See Corr v. Terex USA, LLC*, No. 08-1285, 2011 WL 976718, at *4–5 (D. Kan. Mar. 17, 2011) (finding a Human Factors expert qualified despite lack of experience with and no physical inspection of the machine at issue); *see also Scanlan*, 2018 WL

476165 at *5 (finding Wogalter qualified even though he had not drafted similar warnings). While Wogalter has never drafted a warning for a manufacturer, he testified that he has "written hundreds of articles about warnings and aspects of owner's manuals" and has thus given manufacturers the opportunity to use his warnings or concepts. Doc. 98-2 at 11–12; Doc. 101 at 11. Wogalter also reviewed relevant parts of the manual and personally inspected the tractor and its warnings. *See* Doc. 98-1 at 3–4, 6; Doc. 98-2 at 6. Wogalter is "stay[ing] within the reasonable confines of his subject area" and not providing "opinions on an entirely different field or discipline." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991). Wogalter has the experience, training, and education to offer an opinion on the adequacy of the warnings and instructions.

## B

CNH also argues that Wogalter's opinions are unreliable. Doc. 98 at 19–22. Testimony is reliable if it is based on sufficient facts and data, is the product of reliable principles and methods, and is the result of the expert reliably applying the principles and methods to the facts of the case. *See Roe v. FCA US LLC*, 42 F.4th 1175, 1180–81 (10th Cir. 2022) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *see also* Fed. R. Evid. 702(b)–(d).

First, consider the facts and data on which Wogalter's testimony is based. Rule 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Wogalter arrived at his conclusions after reviewing, among other things, depositions, discovery material, videos of Miller operating the tractor as well as an in-person observation of the tractor, and relevant manuals. Doc. 98-1 at 3–4. These facts and data sufficiently support Wogalter's testimony. *See Ingersoll-Rand*, 214 F.3d at 1243–44 (finding the district court did not abuse its discretion in admitting Human Factors expert's testimony where expert testified based on review of deposition and discovery material); *see also Tomsic*, 2016 WL 9558957 at *7 (finding Wogalter relied on sufficient facts and data when he relied on case-specific information, publications and government reports, and his own knowledge and training). Indeed, CNH's own human factors expert based his opinion on similar information. Doc. 96-6 at 8–10.

CNH argues that Wogalter's conclusions are not grounded in, and indeed contradict, the facts in the record. Doc. 103 at 11. Specifically,

CNH points to Wogalter's assumptions that Miller believed the tractor was stopped or was going to stop when he dismounted, Doc. 98 at 4–5; Miller relied on the warnings and instructions at the time of the accident, *id.* at 8–9; and Miller expected the brake to stop the moving tractor, *id.* at 5–6.

But all these assumptions are consistent with Miller's deposition testimony and the other materials Wogalter was permitted to rely on to form his opinions. For example, Miller repeatedly contends that he believed the brake would set on its own, despite knowing the tractor was still moving when he dismounted. Doc. 98-3 at 26; Doc. 102 at 13. Wogalter's conclusions do not disregard Miller's testimony regarding the tractor's speed when he dismounted, *contra* Doc. 98 at 4; he simply chose not to rely on the tractor's speed in forming his conclusions that the manual and warnings were misleading, Doc. 101-1 at 22. And Miller testified that his belief that the brake would automatically set and stop the tractor was based on both his experience and the operating instructions. Doc. 102-1 at 14. When asked directly whether he relied on his experience or the manual when operating the tractor, Miller replied, "I'm fairly confident it's some combination of both." *Id.* Perhaps these issues would convince a jury to discount Wogalter's opinion, but they are not a basis to exclude his opinion entirely. *See generally Ingersoll-Rand*, 214 F.3d at 1243–44.

Second, Wogalter used reliable methods to evaluate the warnings' adequacy and to reach conclusions based on the facts in the record. Reliability concerns the methodology employed by the expert in reaching his conclusions rather than on the substance of the conclusions themselves. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (citing *Daubert*, 509 U.S. at 595). Wogalter's opinions are based on his education, training, and experience in Human Factors and Ergonomics, Doc. 98-1 at 3; human factors research and principles, *id.* at 14; articles and government data concerning agricultural accidents, *id.* at 13–14; and case-specific information, *id.* at 3–4. Wogalter applied Human Factors principles to the facts of the case and arrived at conclusions which logically follow from the data. *See* Doc. 98 at 9–14. For example, Wogalter notes that his "research indicates that people expect manuals to be a complete reference source, but very few read them completely." Doc. 98-1 at 13. According to Wogalter, this demonstrates the importance of correcting operators' predictable, erroneous beliefs about the brake with "complete and clear information." *Id.* at 12–13. Similarly, Wogalter notes that people often learn by

9

generalizing from one similar situation to another. *Id.* at 10. Wogalter asserts Miller generalized on the day of the accident, setting his expectations based on his experience with the auditory and visual warnings on this tractor and other machines. *Id.* This, Wogalter concludes, was foreseeable by CNH, and so its warnings and instructions needed to be especially clear because the brake functioned differently on different machines. *Id.* at 10–11. That is sufficient to establish reliability. Fed. R. Evid. 702 advisory committee's note (2000).

CNH further asserts that Wogalter's testimony is unreliable because his proposed alternative warnings are speculative and unsupported by *Daubert's* testing requirements. Doc. 98 at 1. More specifically, Wogalter did not test his proposed warnings and instructions on Miller to determine whether it would have changed his actions the day of the accident. *Id.* at 7. But testing is not always required to establish reliability under *Daubert*. *Bitler*, 400 F.3d at 1236 (finding expert's method permissible, despite not being susceptible to testing or peer review, when he applied his knowledge and experience to the facts of the case). When a method is not necessarily "susceptible to testing," an expert may rely on personal knowledge or experience. *Id.* at 1235 (citing *Kumho Tire*, 526 U.S. at 150). That is what Wogalter did here. Doc. 98-1 at 3.

The two cases CNH offers to support its claim that testing is required are inapposite. Doc. 98 at 21. Unlike in *Mitchell v. Gencorp Inc.*, 165 F.3d 778 (10th Cir. 1999), where the Tenth Circuit affirmed the exclusion of experts who "reached their ultimate conclusions before studying the available literature," *id.* at 783, Wogalter's conclusions are based on the extensive research he has conducted in the field, Doc. 98-1 at 3; Doc. 101 at 22. And in the District of New Mexico decision, *Magoffe v. JLG Indus., Inc.*, No. CIV 06-0973, 2008 WL 2967653 (D.N.M. May 7, 2008), the court excluded evidence of an alternative design in a design-defect case because the proffered alternative design had not been tested to determine whether it would have remedied the identified deficiency. *Id.* at 20 (noting that courts have recognized the importance of testing alternative designs in a design-defect case, "especially where the expert has not utilized any other method of research to compensate for the lack of alternative testing"). At least two key distinctions are obvious: Miller is asserting an improper warning claim, not a design defect claim; and Wogalter conducted the necessary research to support his position.

C

Finally, CNH argues that Wogalter's opinions are not relevant. Doc. 98 at 25–27. An expert may testify as to his opinion if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Rule 702(a) directs a trial court to consider, among other things, whether the testimony "is within the juror's common knowledge and experience" and whether the jury would be able to understand the evidence without the testimony. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citations omitted).

Each of Wogalter's opinions may lie outside the juror's common knowledge as they are based in Human Factors principles applied to a complex and powerful piece of machinery. For example, his opinions regarding status and command displays, Doc. 101 at 4–6, and the use of words versus symbols and static versus flashing icons are Human Factors principles applied to a complex machine, *see id.* at 6–7, are not likely common knowledge of a juror unless they have farming experience. And Wogalter's opinion regarding the effect of different aspects of the warnings combined with Miller's past experience and the manual's language could be helpful to the average juror in understanding the evidence or determining a fact in issue—*i.e.*, whether the warnings were adequate under the circumstances. Fed. R. Evid. 702(a). Moreover, Rule 702(a) allows expert testimony even if all it does is contextualize facts which are already in the record. *Gutierrez de Lopez*, 761 F.3d at 1136. Miller intends to offer Wogalter's opinions to help the jury understand *why* the manual and warnings were confusing from an ergonomics perspective and *how* they misled Miller. Doc. 101 at 3. His testimony seems reasonably calculated to aid the jury on these issues for purposes of Rule 702. *See Gutierrez de Lopez*, 761 F.3d at 1136.

CNH argues that Wogalter's opinions are conclusory and unhelpful. Doc. 98 at 26–27. And, to buttress this point, CNH notes that Wogalter's testimony has previously been excluded as unhelpful in a Kansas federal court, suggesting the same result should follow in this case. *Id.* (citing *Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.*, No. 12-2609, 2014 WL 2196416 (D. Kan. May 27, 2014)). There, the court excluded Wogalter's testimony in a warnings case regarding a power washer because the "manual and on-product warnings were written for average consumers," like jury members. *Am. Fam.*, 2014 WL 2196416 at *3. That is not the situation here. The tractor that Miller was operating necessitated on-site training by the local dealer, *see*

11

Doc. 94 at ¶ 2.a.11, and has in-cab warnings that require the user to consult the manual, *see* Doc. 98 at 25. It is hardly the type of equipment made for everyday use for the average juror unless they are familiar with row-cropping agricultural implements. And Wogalter's opinions are more than mere "commonsense observations." *Contra* Doc. 98 at 25 (quoting *Snoznik v. Jeld-Wen, Inc.*, Civil No. 1:09cv42, 2010 WL 1924483, at *19 (W.D.N.C. May 12, 2010)).

CNH further contends that Wogalter's conclusory opinions invade the province of the jury. Doc. 98 at 20–21. An expert may offer an opinion even if it "embraces an ultimate issue," Fed. R. Evid. 704, but may not "simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment," *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). Wogalter's opinions do not run afoul of that rule. It is true that he concludes that the warnings and instructions are inadequate, but he also explains why they are and why they needed to be clearer. And absent strong factors favoring exclusion, "doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Gutierrez de Lopez*, 761 F.3d at 1136 (quoting *Robinson v. Mo. Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994)).

Wogalter's opinions are relevant because they do not simply "instruct the jury how it should rule." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Wogalter provides an adequate basis for those opinions which will allow the jury to exercise its own independent judgment. *Id.* at 1195–96. CNH's arguments do not justify complete exclusion and are best left to cross-examination at trial. *Daubert*, 509 U.S. at 596 (finding the gatekeeping function should not replace "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof").

### III

CNH also moves for summary judgment. Doc. 95. That motion is denied because Miller has raised genuine disputes of material fact as to his Kansas Products Liability Act claims.

Miller's claim arises under the KPLA, K.S.A § 60–3301 *et seq.*, which governs all products liability causes of action in Kansas.[5] *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 803 (Kan. 2019). Kansas law recognizes that a product may be defective as to its manufacture, its design, or the warnings or instructions which accompany it. *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 920 (10th Cir. 2005) (citing *Delaney v. Deere & Co.*, 999 P.2d 930, 936 (Kan. 2000)). In this case, Miller asserts the tractor was defective because it was "not accompanied by adequate warnings of its dangerous characteristics." *Meyerhoff v. Michelin Tire Corp.*, 70 F.3d 1175, 1181 (10th Cir. 1995).

Miller's warning claim invokes three theories: negligence, strict liability, and breach of warranty. Doc. 94 at 11. Under Kansas law, all three theories are consolidated into one products liability claim. *Patton v. Hutchinson Wil–Rich Mfg. Co.*, 861 P.2d 1299, 1311 (Kan. 1993); *see also Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1158 (D. Kan. 2004). Despite consolidation, Miller's products liability claim may be considered under any of the three theories. *See* Pattern Inst. Kan. Civ. 4th 128.22. And contrary to CNH's position, Doc. 96 at 21, one theory's failure does not cause the rest to fail. *See, e.g., Dieker v. Case Corp.*, 73 P.3d 133, 135, 146–47 (Kan. 2003) (analyzing the plaintiff's breach claim after the trial court had dismissed the plaintiff's negligence and strict liability claims as barred by the economic loss doctrine); *see also Patton*, 861 P.2d at 1310–11 (recognizing that a post-sale duty to warn does not exist under a strict liability theory but may under a negligence-based reasonableness inquiry).

CNH makes three arguments in support of its motion. It argues that it did not owe a duty to warn Miller about dangers he already knew, its warnings were not defective, and Miller cannot show causation. At this stage of the proceedings, each fails.

### A

CNH contends it had no duty to warn because it is common knowledge that using a parking brake to stop any moving vehicle, let

---

[5] A federal court sitting in diversity must "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). That law arises from state statute and decisions of a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The parties agree that Kansas law applies. Doc. 94 at ¶ 1.d.

13

alone a large tractor, is "specious." Doc. 96 at 30, 33; Doc. 108 at 3. A manufacturer has a duty to warn of all potential dangers which it knew, or in the exercise of reasonable care should have known, to exist. *Wooderson v. Ortho Pharm. Corp.*, 681 P.2d 1038, 1057 (Kan. 1984); *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 917 (10th Cir. 2005).

The evidence creates a question of fact as to whether the knowledge CNH describes is accurate, much less commonly held. Miller argues that the warnings and instructions, combined with his experience with this and other farm equipment, led him to believe that the parking brake would automatically engage when he left the seat. Doc. 94 at 4. His position is bolstered by the fact that he has other farm equipment—a skid loader and a sprayer—with this capability. Doc. 102-1 at 7. Miller also asserts he read the section of the manual which tells the operator that moving the shuttle lever to the electronic brake position "will cause the transmission to slow the tractor to a stop and then the brake will be applied." Doc. 102 at 44; Doc. 102-2 at 32. Drawing all reasonable inferences in Miller's favor, he has presented a genuine dispute as to whether CNH had a duty to warn consumers like him about when the parking brake would, and would not, automatically set. *See Allen v. Muskogee*, 119 F.3d 837, 839–40 (10th Cir. 1997). The jury may agree with CNH that it was unreasonable to assume a parking brake would stop the tractor, but it may not. This is a question for a jury to decide.

CNH further argues that it had no duty to warn because Miller was a sophisticated, experienced user of the tractor and the danger of exiting a moving tractor was open and obvious. Doc. 96 at 23. K.S.A. § 60-3305(a)–(c) provides exceptions to the general duty to warn. As relevant here, manufacturers are not liable for failing to warn about risks apparent to ordinary users or dangers actually known by the user. *Hiner v. Deere & Co.*, 340 F.3d 1190, 1194 (10th Cir. 2003); Kan. Stat. Ann. § 60-3305(a)–(c). Miller was experienced in operating this tractor and other farm equipment, but the facts do not establish as a matter of law that the risk here—that the brake would not set if the tractor was moving—was apparent or actually known by Miller.

CNH asserts a similar position to the manufacturer in *Hiner*, 340 F.3d at 1195. There, the court reversed the district court's grant of summary judgment in favor of the manufacturer, siding with the operator who argued that a more specific warning regarding the loader's ability to raise by itself was needed. *Id.* at 1194–95 ("There may be a duty to warn if users incorrectly believe that a recognized danger can

be avoided by a particular safety measure."). Similarly, Miller has presented sufficient evidence that he did not fully understand the risk he was exposing himself to. Doc. 102 at 51–52; *Hiner*, 340 F.3d at 1194. CNH's arguments that it had no duty to warn Miller are unavailing at this stage.

## B

CNH next argues that the warnings and instructions are adequate because context clarifies their meaning, Doc. 96 at 32–34, and because the process used to develop them ensured their adequacy, *id.* at 32. "Under Kansas law, the standard for determining whether a warning is adequate is whether it is 'reasonable under the circumstances.'" *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 975 (10th Cir. 2001) (quoting *Wooderson*, 681 P.2d at 1052). A warning is adequate when it is "comprehensible to the average user and convey[s] a fair indication of the nature and extent of the danger." *See Wheeler v. John Deere Co.*, 862 F.2d 1404, 1413 (10th Cir. 1988). Adequacy is generally a question of fact for the jury. *See Wooderson*, 681 P.2d at 1057.

CNH asserts that the visual and auditory warnings tell the operator that he has left the seat without applying the brake. Doc. 96 at 30. These warnings tell the operator that he must take corrective action, not that the brake is going to apply automatically, and they "reasonably and appropriately address[] [the] risks." *Id.* at 30–31. CNH also avers that, regarding the manual, other instructions tell the operator to stop the tractor before dismounting, apply a brake before dismounting, and use the shuttle lever to engage the brake. *Id.*

But Miller has presented evidence that the warnings and instructions, even in context, did not adequately apprise him of the risks he faced, especially given that the automatic brake was new technology and operated differently in different equipment. Doc. 102 at 1, 44, 51–52. The warnings alert in the same way when the operator leaves the seat whether the tractor is stopped or moving. Doc. 102 at 28. And the manual does not specifically state that the brake will automatically apply only when the tractor is stopped. *Id.* at 2. Coupled with Miller's experience with this and other equipment, a jury could conclude that the warnings and instructions led him to reasonably believe the brake would engage automatically. *See McPhail v. Deere & Co.*, 529 F.3d 947, 959 (10th Cir. 2008) (reversing the district court's grant of summary judgment under Oklahoma law because issues of fact regarding the

15

clarity and adequacy of the tractor's warnings, and the danger that may be averted, remained).

CNH's arguments depend on crediting its view of the facts and ignoring Miller's version. That evidence may be offered at trial, and a jury may accept it. But for the purposes of summary judgment, all disputed facts are viewed in the light most favorable to Miller. *See Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 530 (10th Cir. 2016).

To prove its warnings were accurate, CNH also points to the procedure it used in creating the manual as well as that its warnings are in-line with industry standards. Its product validation team verified the manual through stages, Doc. 96 at 7; its technical publication department drafted the manual, *id.* at 13; it followed industry standards, Doc. 96-6 at 29; and its instruction to engage or apply the parking brake before dismounting is consistent with standard safety manuals, *id.* at 32. These facts may weigh in favor of finding that the warnings were reasonable under the circumstances, but they do not establish the warnings' adequacy as a matter of law. *See, e.g.*, *O'Gilvie v. Int'l Playtex, Inc.*, 821 F.2d 1438, 1443 (10th Cir. 1987).

## C

CNH's third argument is that Miller cannot show causation. Causation incorporates two concepts: causation in fact and legal causation. *See Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 228 P.3d 1048, 1060 (Kan. 2010). To prove causation in fact, the plaintiff must prove that "but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* And for legal causation, "the plaintiff must show that it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes were foreseeable." *Id.*

CNH first argues that its warnings and instructions were not the but-for cause of Miller's injuries because he ignored the warnings and did not rely on the manual. Doc. 96 at 30–32. But Miller has presented evidence that he did not ignore the visual and auditory warnings. Rather, the evidence viewed in the light most favorable to Miller indicates that he was aware of those warnings and assumed these meant that the brake would apply as it had when he left the seat with the tractor stopped. Doc. 102 at 13. Likewise, Miller's testimony demonstrates that he relied on both his experience and the manual in believing that the brake would automatically engage and stop the tractor. Doc. 102-1

16

at 14. Further, Miller asserts that he read all applicable sections of the manual. Doc. 102 at 19–20, 25–26. CNH has cited no authority supporting the notion that Miller's failure to read the entire manual defeats causation—reading relevant portions of the manual is different from not reading it at all. *See* Doc. 96 at 37–38; Doc. 108 at 53.

*Messer v. Amway Corp.*, 106 F. App'x 678, 685–86 (10th Cir. 2004), does not support CNH's position. *Contra* Doc. 96 at 37. There, the court found that failure to include an additional warning was not the but-for cause of the plaintiffs' injuries because the plaintiffs could not identify any difference between the existing warning and the additional warning that would have prevented their injuries. *See Messer*, 106 F. App'x at 685–86. Miller is not arguing that he needed *more* warnings but *different* warnings to resolve his misapprehension. *See e.g.,* Doc. 102 at 43. And he has presented alternative instructions that his expert believes would have prevented his injury. *See e.g.,* Doc. 101 at 3. In addition, the district court in *Messer* observed that the plaintiffs did not read or heed existing instructions, so it was "pure speculation" that any new warnings would have changed their behavior. *Messer v. Amway Corp.*, 210 F. Supp. 2d 1217, 1230 (D. Kan. 2002), *aff'd*, 106 F. App'x 678 (10th Cir. 2004). But Miller testified that he did, in fact, read and rely on the existing warnings and instructions. Doc. 101 at 13–15. The competing evidence presented would permit a jury to decide the issue of but-for causation in either party's favor. *See generally Janny v. Gamez*, 8 F.4th 883, 920 & n.6 (10th Cir. 2021) (finding that a jury might find in favor of plaintiff based on plaintiff's view of the evidence); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

CNH finally argues that Miller's conduct, not its warnings, caused Miller's injury because Miller "exited a [t]ractor that he knew was in gear and was moving forward." Doc. 108 at 53. Essentially, it argues that Miller's own action was the superseding cause of his injury. For a defendant to absolve itself of liability, a superseding cause must break the connection between the defendant's initial act and the harm caused. *Puckett*, 228 P.3d at 1060. An intervening cause will only break the connection when it is independent from the defendant's action and could not reasonably have been foreseen. *See id.* at 1060–61 (citing Pattern Inst. Kan. Civ. 4th 104.03). While Miller likely knew that the tractor was still moving, Doc. 96-5 at 36, a jury could conclude Miller's belief that the brake would automatically set and stop the tractor, Doc. 102 at 14, was the foreseeable result of CNH's warnings and instructions, *Puckett*, 228 P.3d at 1060–61 (quoting *Miller v. Zep Mfg. Co.*, 815

P.2d 506, 518 (Kan. 1991)). And while superseding causes are still recognized in extraordinary cases, in adopting comparative fault, Kansas courts have moved from "all or nothing concepts" to having juries apportioning fault among the parties. *See Kudlacik v. Johnny's Shawnee, Inc.*, 440 P.3d 576, 581 (Kan. 2019); *Hale v. Brown*, 197 P.3d 438, 440 (Kan. 2008).

Two additional points weigh against CNH's argument for summary judgment. First, causation and comparative fault are normally questions of fact for the jury. *Baker v. City of Garden City*, 731 P.2d 278, 281 (Kan. 1987); *Hale*, 197 P.3d at 441; *see also Deines v. Vermeer Mfg. Co.*, 755 F. Supp. 350, 351–54 (D. Kan. 1990) (finding adequacy of the warnings and the issue of comparative fault were best left to the jury where a farmer reached into a hay baler despite warnings). Second, a jury could conclude the warnings and instructions were inadequate, thus triggering a rebuttable presumption of causation under Kansas law. *Wooderson v. Ortho Pharm. Corp.*, 681 P.2d 1038, 1057 (Kan. 1984).

None of the cases CNH presents is similar to the present case or convincingly demonstrates that the issue of causation can be decided as a matter of law. Rather, causation is best left to the jury.

## IV

For the reasons set forth above, CNH's motions to exclude the testimony of Miller's expert, Wogalter, Doc. 97, and for summary judgment, Doc. 95, are DENIED.

It is so ordered.


Date: December 14, 2022        s/ Toby Crouse
                               Toby Crouse
                               United States District Judge