**In the United States District Court
for the District of Kansas**

———————

Case No. 6:20-cv-01293-TC

———————

BRIAN MILLER,

*Plaintiff*

v.

CNH INDUSTRIAL AMERICA LLC,

*Defendant*

———————

**ORDER**

Plaintiff Brian Miller filed this products liability suit for injuries he sustained while operating a tractor manufactured by Defendant CNH Industrial America LLC. Doc. 4. Miller claims that CNH's warnings and instructions regarding the tractor's electronic park brake were inadequate because they led him to believe the tractor would stop as he dismounted the moving tractor. Doc. 102 at 2. Miller now moves to exclude CNH's expert's testimony. Doc. 124. For the reasons below, that motion is denied.

**I**

**A**

The admissibility of expert testimony is guided by Federal Rule of Evidence 702.[1] *See Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). To fulfill its gatekeeping role, a trial court must ensure that the expert is qualified and that his or her testimony is both reliable and relevant. *Id.* "Rule 702 requires an expert witness to be qualified by 'knowledge, skill, experience, training, or education . . . .'" *Tudor v.*

---

[1] Federal law governs the admissibility of evidence in federal diversity cases. *Sims v. Great Am. Life Ins.*, 469 F.3d 870, 880 (10th Cir. 2006).

*Se. Okla. State Univ.*, 13 F.4th 1019, 1029 (10th Cir. 2021). Testimony is reliable if "it is based on sufficient data, sound methods, and the facts of the case." *Roe*, 42 F.4th at 1180–81 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). It is relevant if it "help[s] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing Fed. R. Evid. 702 advisory committee's note (2000)). But "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note (2000).

**B**

Familiarity with the factual and procedural background of this dispute is presumed. *See generally* Doc. 115 at 2–4. In summary, Miller and his father operate a dairy farm in Kansas. Doc. 94 at ¶ 2.a.6. In October 2018, Miller was using the farm's used New Holland T7.270 Autocommand tractor, manufactured by CNH, to pull a seed drill while planting wheat. *Id.* at ¶ 2.a.7–8, 12. While the tractor was moving, Miller got up from the driver's seat and stepped off the tractor to inspect what he believed to be a piece of metal on the ground. *Id.* at 4. After Miller stepped onto the ground, the seed drill hit him in the back, knocked him to the ground, and eventually ran him over. *Id.* at 4–5.

**II**

CNH plans to present expert testimony from Kirk Ney, an expert in accident analysis. Miller moves to exclude Ney's expert testimony. Doc. 124. But Miller does not appear to make a broadside argument that Ney is unqualified or that every one of his opinions are unreliable and irrelevant. Rather, Miller's brief motion focuses on particular aspects of Ney's proposed opinions. The following will attempt to address the crux of those concerns in the order they are made. For

the following reasons, Ney's testimony, consisting of six opinions,[2] is admissible.[3]

Ney's first opinion is that the tractor at issue has been in operation for seven years without any similar accidents. Doc. 125-1 at 6–7. Miller challenges the method Ney used to calculate the number of hours that similar tractors have operated without similar accidents because "similar tractors" may not include tractors with an electronic park brake like the one at issue here. Doc. 125 at 2.

Ney's calculations are based on accidents where "somebody got off a moving tractor." Doc. 125-2 at 3. Ney agrees that this would have captured more accidents than those identical to Miller's, *id.* at 4, but explains that this was his point, Doc. 131-1 at 78. In conducting his analysis, he wanted to capture all similar accidents involving "substantially similar" tractors, Doc. 125-1 at 6, and started with the "broadest possible definition . . . to be very conservative in the numbers in the analysis," Doc. 131-1 at 78; *see also* Doc. 131 at 6. Miller claims that the tractor's instructions and warnings led him to believe he stepped off a moving tractor that would come to a stop. *See* Doc. 94 at 4. The fact that there have been no similar accidents—whether stated in that way or in terms of total number of accident-free hours of tractor use—could be helpful to the average juror in determining whether Miller's claim is reasonable. Fed. R. Evid. 702(a). Ney followed sound principles in arriving at his calculation; Miller's contention speaks to the weight of Ney's opinion and is more properly addressed on cross examination than through exclusion. *See Goebel v.*

---

[2] Ney offers a seventh opinion, that designing a tractor to avoid obstacles was not available in 2018. Doc. 125-1 at 12. Miller asserts that because he "is no longer making a claim that the tractor should have been designed with an obstacle avoidance system," that opinion is irrelevant. Doc. 125 at 1, 8. CNH does not refute this point. *See* Doc. 131. Because Ney's seventh opinion will not "help the trier of fact to understand the evidence or to determine a fact in issue," it is excluded. Fed. R. Evid. 702(a).

[3] Trial courts have discretion to determine how to perform their Rule 702 gatekeeping duty. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). And while a *Daubert* hearing is the most common method for fulfilling that function, it is not required. *Id.* Because neither party sought such a hearing and given the record provided, including Ney's deposition testimony, his report, and the parties' submissions on the matter, there is sufficient evidence to resolve Miller's motion without holding a *Daubert* hearing. *See also* Doc. 115 at 6 n.4.

*Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 999 (10th Cir. 2003); *see also White v. Deere & Co. & John Deere Ltd.*, No. 13-CV-02173, 2016 WL 541035, at *2 (D. Colo. Feb. 11, 2016) (concluding Ney's testimony regarding lack of similar accidents was relevant and admissible because he "identified the criteria for what constitutes a similar incident and provided a foundation for his statement").

Ney's second opinion is that the tractor contains several warnings and instructions, including to always engage the brake and to never exit a moving tractor, which, if followed, would have prevented Miller's accident. Doc. 125-1 at 7–9. Miller takes issue with the fact Ney formed his opinion based on the wrong version of the manual. Doc. 125 at 4. Ney relied on the 2012 version of the manual even though Miller used the 2011 version. *Id.*; Doc. 136 at 3. Other courts have rejected this argument when there is not a material difference between the version relied on and the correct version. *Pepe v. Casa Blanca Inn & Suites LLC*, No. 18-CV-476, 2020 WL 5219391, at *8 (D.N.M. Apr. 10, 2020); *Lain v. BNSF Ry. Co.*, No. 13-CV-2201, 2014 WL 6388419, at *5 (D. Kan. Nov. 14, 2014). Relevant to Ney's opinion, both manuals instruct the operator never to dismount a moving tractor and to engage the brake before dismount. C*ompare* Doc. 125-1 at 7 ("Never mount or dismount from a moving machine.") *with* Doc. 131-1 at 35 ("Do not get off the tractor while it is in motion"). Miller may argue to the jury that Ney's opinion is flawed for relying on the 2012 manual, but that is not a basis to exclude his opinion entirely. *United States v. Foust*, 989 F.3d 842, 847 (10th Cir. 2021); *Tudor v. Se. Okla. State Univ.*, 13 F.4th 1019, 1031 (10th Cir. 2021) (noting district courts have "broad discretion in expert witness determinations") (quotation omitted).

Miller also contests Ney's second opinion on the bases that Ney is not qualified to give it and his "common sense" opinion is not helpful to the jury. Doc. 125 at 4. To qualify as an expert, a witness must "possess skill, experience, or knowledge in the 'particular field'" or the field must "fall 'within the reasonable confines' of [the witness's] expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (citations omitted). Ney possesses the exact experience that Miller claims he lacks. "Ney is an engineer with experience in design of tractors and has worked with and around tractors for decades." Doc. 131 at 2–3. Ney conducted accident analysis for John Deere and was particularly involved with safety warnings and manuals. Doc. 125-2 at 7. And there appears to be no authority precluding an expert from referencing warnings and instructions which he describes as

common sense. Ney's second opinion is relevant to CNH's contention that Miller's own action, not CNH's warnings regarding the brake, caused his injury.

Ney's third opinion is that Miller intentionally got off a moving tractor even though he knew better and despite his "normal safe procedure." Doc. 125-1 at 9–10. Miller argues that this opinion is merely a recitation of Miller's deposition testimony. Doc. 125 at 4–5. But Rule 702(a) allows expert testimony even if all it does is contextualize facts which are already in the record. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014). Ney can testify as to what he understands of the operating conditions and Miller's actions on the day of the accident in light of his experience.

Ney's fourth opinion is that the tractor was moving faster than Miller remembered at the time of the accident. Doc. 125-1 at 10. Miller contends that Ney improperly relied on the work of Dr. Frantz, another of CNH's experts. Doc. 125 at 5–6. But Rule 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." In forming his opinion about the tractor's speed, Ney relied on Frantz's demonstration, of which he took video, and eyewitness deposition testimony. Doc. 125-1 at 10. And Ney's opinion is not merely "commentary on evidence" or a video he watched that will be shown to the jury. *Contra* Doc. 136 at 1–2 (citing *Choate v. City of Gardner, Kansas*, No. 16-2118, 2020 WL 774097, at *2 (D. Kan. Feb. 18, 2020)). Rather, his opinion is that the tractor was moving faster at the time of the accident than Miller remembers. Doc. 125-1 at 10. This point is relevant to the cause of the accident—the issue Ney was retained to opine on. It is possible that there may be overlap between Frantz's and Ney's testimony, Doc. 125 at 6, but that can be addressed at trial if it truly becomes duplicative. *See United States v. Chavez*, 976 F.3d 1178, 1199 n.14 (10th Cir. 2020) (citing Fed. R. Evid. 611(a)(1)–(2)).

Ney's fifth opinion is that it is not reasonable to shut down a large agricultural tractor when an operator leaves the seat, and no manufacturer currently does so on similar tractors. Doc. 125-1 at 10–11. Miller asserts that this opinion is unhelpful because the reasonableness of the design is not at issue. Doc. 125 at 6–7. But Ney offers this opinion to address Miller's claim that he believed the tractor had this capability. Doc. 131 at 7. The reasonableness of that claim is certainly at issue and could prove helpful to the average juror. Fed. R. Evid. 702(a). Miller also briefly asserts that Ney is unqualified to give this opinion. Doc. 125 at 7. Ney's expertise is in product design and

development as well as agricultural equipment accident reconstruction and causation. Doc. 125-1 at 3. He has degrees in physics and engineering. *Id.* Ney worked for John Deere for almost thirty years and was involved in product design, engineering, and testing. *Id.*; Doc. 131 at 2. Ney need not have designed *this* tractor to be qualified to opine on whether it is reasonable to shut down a tractor when the operator leaves the seat. *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)).

Ney's sixth opinion is that it is not reasonable to compare the tractor with other types of single-use equipment, such as a sprayer or skid steer. Doc. 125-1 at 11–12. Miller questions the basis for Ney's distinction between a tractor and a sprayer—that a sprayer may require a licensed operator in the cab. Doc. 125 at 7; Doc. 136 at 4. Ney explains that, because a sprayer applies "caustic and potentially harmful" chemicals, it makes sense that it would need a shutdown mechanism if an operator is not in the seat. Doc. 125-2 at 18. Miller again briefly argues that Ney is unqualified because he has not personally designed skid steers or the mechanism which would stop a sprayer when the operator leaves the seat. Doc. 125 at 7–8. But that argument fails for the same reason as above. Ney's opinion is based on his education and experience in the agricultural field, Doc. 131 at 3, and he is qualified to opine on the differences between tractors and other agricultural equipment, *id.* at 2–3, 8–9. These issues may prove fodder for cross examination, but they are not reasons to exclude Ney's opinion entirely. *Daubert*, 509 U.S. at 596 (finding the gatekeeping function should not replace "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof").

### III

For the reasons set forth above, Miller's motion to exclude the testimony of CNH's expert, Kirk Ney, Doc. 124, is DENIED.

It is so ordered.

Date: January 20, 2023         s/ Toby Crouse
                               Toby Crouse
                               United States District Judge